MARK CRAIG, Petitioner-Appellant, v. THE ELECTORAL BOARD OF OCONEE TOWNSHIP, Respondent-Appellee.

Fifth District No. 5—89—0249

Opinion filed January 8, 1991.

William E. Farr, of Pana, for appellant.

Daniel M. Franklin, of Pana, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

An Oconee Township Democratic Party caucus was held on January 10, 1989, for the purpose of nominating candidates to local township offices. At the caucus a motion was made and carried to adopt rules of procedure whereby the candidates would be selected as a slate. A slate consisting of six candidates was nominated, and Mark Craig was then nominated as road commissioner. The nomination of Mark Craig was not accepted. The caucus accepted the first slate of candidates to run in the local township election.

On January 20, 1989, Mark Craig served objections to the caucus procedure upon the Oconee Township clerk. The objections were set for hearing on January 27, 1989. Craig and his attorney appeared at the hearing and moved to withdraw Craig's objections to the caucus procedure. The motion was denied. Craig's motion for a continuance of the hearing on his objections to caucus procedure was denied. Craig then filed an objection to the nomination papers. The board allowed the filing of the objection to nomination papers. Craig and his attorney then left the hearing. At this point in the proceedings, the board examined both pleadings and determined that the only substantial difference between the two pleadings was the latter's prayer for a new caucus. The electoral board proceeded to conduct a hearing and concluded that the caucus of January 10, 1989, was conducted in a proper manner. The board overruled the petitioner's objections and sustained the caucus results.

Craig filed for judicial review of the board's decision. The trial court's decision was limited to two issues: (1) whether the electoral board's decision was arbitrary or not supported by the findings; and (2) whether the electoral board had authority to conduct the hearing on both the objections to caucus procedure and objection to nomination papers. The trial court confirmed the decision of the electoral board and

assessed costs of $350 against petitioner for service of the subpoenas and notices of the January 27, 1989, hearing. Petitioner appeals.

■ Judicial review of decisions of the electoral board is intended to provide a remedy against arbitrary or unsupported decisions. *Williams v. Butler* (1976), 35 Ill. App. 3d 532, 538, 341 N.E.2d 394, 398; *Wiseman v. Elward* (1972), 5 Ill. App. 3d 249, 254, 283 N.E.2d 282, 287.

■ The first issue raised by petitioner is whether it was error for the electoral board not to accept the nomination wherein petitioner's name was included. We find no error. Section 6A—1.1 of the Township Law of 1874 (Ill. Rev. Stat. 1989, ch. 139, par. 59a.1) provides that "[t]he rules of procedure for conducting a township *** caucus must be approved and may be amended by a majority vote of the qualified participants attending the caucus." Section 6A—1.1 also provides that the rules of procedure shall include "[w]hether candidates will be selected as a slate or as individual nominees for each office." (Ill. Rev. Stat. 1989, ch. 139, par. 59a.1(a).) The minutes of the January 10, 1989, caucus reveal that a motion was made to adopt rules of the caucus whereby candidates would be nominated by slate. The motion carried. As shown in the minutes, the caucus then proceeded as follows:

> "Clarence Schmitz called for the nominations. Carl Rakers nominated the following slate: Wilmer McDonald—Highway Commissioner, Clarence Schmitz—Supervisor, Carol Hoehn—Clerk, Kenneth Flesch, Jim Berns, Joe Wolf, and Paul Temmen—Trustees.
>
> Tom Berns nominated Mark Craig for road commissioner. It was explained that his nomination cannot [*sic*] be accepted due to the ruling that nominations be accepted as a slate.
>
> John Berns made a motion that the nominations be closed, seconded by Tom Berns, Motion carried."

Judicial review of electoral board decisions are not to exceed the record made before that board. (*Wiseman*, 5 Ill. App. 3d at 255, 283 N.E.2d at 287.) The minute record shows that although an opportunity was given for discussion on whether to adopt the proposed rules of procedure, no one objected to the rule that nominations would be by slate. Petitioner argues that Tom Berns' nomination of Mark Craig was obviously a nomination of a slate consisting of the previously nominated slate with Craig's name substituted for Wilmer McDonald's. We disagree.

■■ The primary rule of statutory construction is that the court must ascertain and give effect to the intent of the legislature. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 674, 677.) When construing a statute, the court should look first to the language of the stat-

ute (*Robinson*, 89 Ill. 2d at 475), giving the terms of the statute their plain and ordinary meaning (*People v. Steppan* (1985), 105 Ill. 2d 310, 317, 473 N.E.2d 1300, 1303-04). Section 6A—1.1(a)(4)(6) mandates that the rules of procedure shall include whether the candidates will be selected as a slate or as individual nominees. A slate is a list of candidates for public office, while an individual is defined as a single person as distinguished from a group or class. (Black's Law Dictionary 1245, 696 (5th ed. 1979).) Given the common meaning of these words, and the statutory distinction afforded in section 6A—1.1 to the selection of candidates as a slate or as individuals, it is clear that Tom Berns' nomination of Mark Craig was as an individual and not as a slate.

■ Petitioner next argues that the electoral board erred in conducting a hearing on his objections to caucus procedure, where the petition did not contain the statutory prerequisites of section 10—8 of the Election Code:

> "The objector's petition shall give the objector's name and residence address, and shall state fully the nature of the objections to the certificate of nomination or nomination papers or petitions in question, and shall state the interest of the objector and shall state what relief is requested of the electoral board." (Ill. Rev. Stat. 1989, ch. 46, par. 10—8.)

Petitioner argues that his objections to caucus procedure did not contain a statement of his residence, a full statement of the objections, a statement of his interest, and a statement of the relief requested. We have examined the two petitions filed by Craig and find the differences between the documents to be minimal. The objections to caucus procedure, while stating that Craig is a resident of Oconee Township, do not provide his residence address. The objection to nomination papers does include Craig's residence address. While Craig argues that his first petition does not contain a full statement of his objections, we find the objections in each petition to be substantially similar. In fact, the objections in the initial petition, which Craig attempted to withdraw, are more detailed than those in the second petition. Finally, we note that the objection to nomination papers includes the following, which is not included in the objections to caucus procedure:

> "The interest of Mark Craig is that of a resident of Oconee Township and also that of an individual who sought nomination as the Democrat candidate for Highway Commissioner.
> The relief requested is a new caucus."

With regard to the board's authority to conduct its hearing on both petitions, Craig contends that the board erred in not allowing him to withdraw his objections to caucus procedure and reschedule the hearing

for proceedings on his objection to nomination papers. Clarence Schmitz, chairman of the electoral board, testified before the trial court that at the hearing called on petitioner's objections to caucus procedure:

> "We ruled that we would not let him withdraw his former nomination papers on the objection to the caucus procedure and we did allow him to file the new one because we didn't think that we could object to that but we also informed him that we would hear both the same day since they were primarily the same and there weren't any differences in them. We assumed that he wanted a new caucus."

The trial court found that the content of the objections to caucus procedure and the objection to nomination papers were essentially the same. The court noted that the objections to caucus procedure "did not contain the magic words such as objection to nomination papers, then set forth the relief that was being sought." Nonetheless, the court ruled that the electoral board carried out the intent of the legislature in proceeding to a hearing on the merits of the objections filed. We agree with the trial court's ruling.

■ It is vitally important that nomination objections be resolved at the earliest possible time. (*Thurston v. State Board of Elections* (1979), 76 Ill. 2d 385, 389, 392 N.E.2d 1349, 1351.) Once the electoral board denied petitioner's motion to withdraw his objections to caucus procedure, the board advised the petitioner that both petitions would be considered at the hearing. Petitioner did not then move for a continuance or otherwise inform the board of a reason why the hearing on his objection to nomination papers should not proceed. Rather, petitioner and his attorney voluntarily absented themselves from the hearing. Based on the facts aforesaid, we affirm the trial court's ruling that the electoral board did not err in conducting a hearing on the objections on January 27, 1989.

■ Petitioner also contends that the board did not schedule the hearing in accordance with the Election Code. Section 10—10 provides:

> "The day of the meeting shall not be less than 3 nor more than 5 days after the receipt of the certificate of nomination or nomination papers and the objector's petition by the chairman of the electoral board." (Ill. Rev. Stat. 1989, ch. 46, par. 10—10.)

The chairman of the electoral board received the objections to caucus procedure on January 20, 1989. The hearing was held on January 27, 1989. Although the hearing occurred two days beyond the statutory time limit, petitioner does not contest that he had notice of the hearing and does not deny that subpoenas were issued and witnesses were available at the hearing. Furthermore, the record reveals that petitioner did

not raise this issue prior to or during proceedings in the trial court. It is axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879.) Because petitioner has not shown how he was prejudiced by the delay in the hearing date, and because he failed to raise this issue below, we will not delve into the merits of this issue.

■ We are also asked to pass on the issue of whether the circuit court's issuance of subpoenas for the January 27, 1989, hearing was error and not in accordance with statutory procedure. Petitioner argues that section 10—10 requires that the chairman issue subpoenas. Petitioner also contends that the circuit court is not empowered to issue subpoenas in matters not pending before the court. Petitioner has failed to cite any authority which precludes the circuit court from issuing subpoenas at the request of the electoral board chairman as was done here. No allegation has been made that witnesses served with said subpoenas were not present at the hearing. The plain language of section 10—10 gives the chairman the discretion to issue subpoenas. The statute does not state that the chairman shall issue the subpoenas without the assistance of the circuit clerk. We find that the issuance of the subpoenas here did comport with the legislature's intent. See *Robinson*, 89 Ill. 2d at 475, 433 N.E.2d at 677.

■ Finally, petitioner argues that it was error for the trial court to award costs to the respondent. There is no dispute that the $350 taxed as costs represents the costs incurred by the electoral board for service of notice and subpoenas for the January 27, 1989, hearing. Section 5—109 of the Code of Civil Procedure allows a defendant to recover costs:

> "[i]f any person sues in any court of this state, in any action, wherein *** judgment is entered against the plaintiff, then judgment shall be entered in favor of defendant to recover defendant's costs against the plaintiff." (Ill. Rev. Stat. 1989, ch. 110, par. 5—109.)

Based on this statute, the trial judge was empowered to award costs herein. In light of the facts of this case, we do not find that the trial court abused its discretion in awarding costs to the respondent. We affirm the judgment of the Shelby County circuit court.

Affirmed.

RARICK, P.J., and GOLDENHERSH, J., concur.